# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

ABDARAHMANE DIA,                     )
                                     )
    Petitioner,               )
                                     )
v.                                   )          Case No. CIV-26-219-SLP
                                     )
MARY DE ANDA-YBARRA, et al.,         )
                                     )
    Respondents.              )

## REPORT AND RECOMMENDATION

Petitioner Abdarahmane Dia, a Senegalese citizen proceeding with counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE").[1]  (Doc. 1).[2]  United States District Judge Scott L. Palk referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C).  (Doc. 3).  In accordance with the briefing schedule, (Doc. 6), Respondents timely filed a response.[3]  (Doc. 8).  Petitioner timely filed a reply.  (Doc. 9).  As fully set forth below, the undersigned recommends that the Court **GRANT** the Petition in part and order Respondents to provide

---

[1] Petitioner is housed at Cimarron Correctional Facility in Cushing, Oklahoma.  (Doc. 1, at 8).

[2] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

[3] The response was not filed on behalf of Respondent Scarlet Grant, Warden of the Cimarron Correctional Facility, because she is not a federal official.  (Doc. 8, at 9 n.1). The undersigned concludes that a separate response from Warden Grant is not necessary to resolve this matter.

Petitioner a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days or otherwise to release him if no hearing is held within that time.

## I.      Introduction to the Immigration and Nationality Act

The two sections of the Immigration and Nationality Act ("INA") at issue are 8 U.S.C. § 1225 and § 1226.  Section 1225(a)(1) describes an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States."  *Id.* § 1225(a)(1) (citation modified).  The statute defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  *Id.* § 1101(a)(13).  Under § 1225(b)(2)(A), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a."  In other words, the alien is subject to mandatory detention while he awaits removal proceedings.

On the other hand, Section 1226(a) authorizes detention of an alien "on a warrant issued by the Attorney General."  *Id.* § 1226(a) (citation modified).  An alien detained under § 1226(a) is entitled to a bond hearing at which he can argue to an immigration judge that he should be released while he awaits removal proceedings.  *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1))).

Accordingly, if Petitioner is an "applicant for admission" and "seeking admission" under § 1225(b)(2)(A), he must be detained and is not entitled to a bond hearing.  If he is

not an "applicant for admission" and "seeking admission" under § 1225, then Petitioner falls within the confines of § 1226(a), which would entitle him to a bond hearing and potentially release.

For many years, Immigration Judges applying the INA provided bond hearings for aliens who had entered the country without inspection and were later apprehended and detained by ICE. *See Jonathan Javier Yajure Hurtado*, 29 I. & N. Dec. 216, 225 n.6 (BIA 2025) ("*Hurtado*"). But on September 5, 2025, the Board of Immigration Appeals ("BIA") determined that an immigration judge does not have authority to hear a request for bond by an alien present in the United States who has not been admitted after inspection because the alien was "subject to mandatory detention" under § 1225. *Id.* at 229. This change in interpretation of the INA has led to a nationwide influx of habeas corpus petitions seeking bond hearings for aliens who were recently detained after living for years in the United States without inspection.

## II.    Factual Background

Petitioner entered the United States on or around February 23, 2024. (Doc. 8, at Ex. 1, at 1; Doc. 1, at 19). On February 24, 2024, ICE detained Petitioner and instituted removal proceedings against him, alleging he was an alien present in the United States who had not been admitted or paroled. (Doc. 8, at Ex. 1, at 1). Petitioner was eventually released from custody on his own recognizance. (Doc. 1, at 19, Doc. 8, at 11). During his removal proceedings, Petitioner filed a Form I-589 asylum application, seeking lawful residence in the United States. (Doc. 1, at 19).

Petitioner was re-detained by ICE on or around February 2, 2026. (Doc. 1, at 19; Doc. 8, at 11). Respondents assert that Petitioner is currently detained pursuant to 8 U.S.C. § 1225(b)(2). (Doc. 8, at 11). Petitioner asserts he is "not eligible for a bond hearing" under § 1226 because of *Hurtado*. (Doc. 1, at 19). Petitioner's removal proceeding is ongoing. (*See id.* at 19).

## III.    Petitioner's Claims and Respondents' Responses

In Count I, Petitioner alleges a violation of the INA, arguing that the mandatory detention provision at 8 U.S.C. § 1225(b)(2) "does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by Respondents." (*Id.* at 20). According to Petitioner, he is instead detained under 8 U.S.C. § 1226(a). (*Id.*) In Count II, Petitioner contends his detention violates his Fifth Amendment right to due process. (*Id.* at 20-21). Petitioner states that "[b]ecause no individualized custody revocation has been made and no circumstances have changed to make [Petitioner] a flight risk or a danger to the community, Respondents' revocation of [Petitioner's] release violates his right to procedural due process." (*Id.* at 20). Petitioner seeks various relief, including that this Court "[i]ssue a Writ of Habeas Corpus requiring that Respondents release Petitioner or, in the alternative, provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within five days." (*Id.* at 22). Petitioner also requests an award of attorney fees and costs under the Equal Access to Justice Act ("EAJA").[4] (*Id.*)

---

[4] To the extent Petitioner may be entitled to EAJA fees and costs as a prevailing party, he must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B); *see also*

Respondents contend that Petitioner must exhaust his administrative remedies before seeking judicial relief. (Doc. 8, at 14-15). They also assert that Petitioner is properly detained under 8 U.S.C. § 1225(b)(2). (*Id.* at 15-31). Finally, Respondents state that Petitioner's due process argument is meritless. (*Id.* at 31-39).

## IV.  Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## V.  Analysis

### A.  Administrative Exhaustion of Petitioner's Remedies Is Futile.

On February 18, 2026, the United States District Court for the Central District of California vacated *Hurtado* "as contrary to law under the APA." *Bautista v. Santacruz*, No. 25-cv-1873-SSS-BFM, --- F. Supp. 3d ----, 2026 WL 468284, at *12 (C.D. Cal. Feb. 18, 2026). Respondents contend that the vacatur of *Hurtado* means that "immigration judges are free to make independent bond determinations," and petitioners must now request and attend a bond hearing with an immigration judge in order to exhaust their administrative remedies before seeking habeas relief. (Doc. 8, at 15). Respondents state

---

*Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025) (interpreting "EAJA's broad language to unambiguously authorize fees in habeas actions challenging immigration detention"). Accordingly, the Court need not address this request at this juncture.

that Petitioner failed to exhaust his administrative remedies because he did not seek a bond redetermination hearing, and he is therefore not entitled to habeas relief.  (Doc. 8, at 14-15).

As an initial matter, Respondents fail to explain how the vacatur of *Hurtado*, which occurred on February 18, 2026, affects a Petition filed nine days earlier on February 9, 2026.[5]  (Doc. 1, at 23) (Petition filed February 9, 2026).  Next, Respondents are correct that while § 2241 "does not expressly contain" an exhaustion requirement, "[t]he exhaustion of available administrative remedies is [generally] a prerequisite for § 2241 habeas relief."  *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010).  However, an "exception to the exhaustion requirement applies if a petitioner can demonstrate that exhaustion is futile."  *Id.*  Here, the undersigned concludes that exhaustion is futile.

Petitioner states that "[a]lthough Respondents have issued written notices and oral advisals referencing the February 18, 2026[,] *Bautista* [] order, these actions have not resulted in the release of detainees found eligible for bond."  (Doc. 9, at 2).  Court determinations across the country have supported Petitioner's allegation and found that the Government "do[es] not recognize . . . court orders vacating . . . administrative directions" in this immigration context.  *Velasquez Montillo v. Brooksby*, No. 4:26-cv-18-DN-PK, 2026 WL 592355, at *10 (D. Utah Mar. 3, 2026); *see also Velasquez-Beltran v. Noem*, No.

---

[5] Respondents' argument additionally perplexes the court because it implies that the Executive Branch presently concludes that the same detainee is detained both by § 1226, thus permitting consideration for release on bond (at the immigration judge level), and by § 1225, where he is "subject to mandatory detention" (at the policymaking and government counsel level).  (Doc. 8, at 19).

3:26-cv-959-JES-MSB, 2026 WL 524056, at \*3 (S.D. Cal. Feb. 25, 2026) (noting Government continued to argue § 1225 applied "after *Hurtado* was vacated"); *Arroyave v. Stamper*, No. 1:26-cv-93-SDN, 2026 WL 508822, at \*1 (D. Me. Feb. 24, 2026) (noting "the Government asserts it detains [petitioner] under 8 U.S.C. § 1225(b)(2)" six days after *Hurtado* vacatur).  Moreover, Respondents provide no evidence that reasonably rebuts or otherwise calls into question Petitioner's futility argument.  Respondents cite a single authority that purports to demonstrate an immigration judge's present ability to grant bond. (*See* Doc. 8, at 15) (citing ICE Online Detainee Locator System[6]).  Their evidence is apparently a notice, listed at the top of ICE's Online Detainee Locator System, that informs visitors that they "may be a member of a class that has been certified by the United States District Court for the Central District of California."  ICE Online Detainee Locator System, *supra* note 6 (click "Notice - English").  But the notice makes no mention of whether ICE continues to apply *Hurtado*'s principles, and similarly provides no evidence that immigration judges both have authority to grant bond and are granting bond to eligible detainees.

Respondents ask the Court to trust that immigration judges are no longer bound explicitly or implicitly by the rule set forth in *Hurtado*, but this statement requires the undersigned to ignore other courts' conclusions that the Government still determines non-citizens like Petitioner are subject to mandatory detention under § 1225.  The undersigned

---

[6] https://locator.ice.gov/odls/#/search (last visited Mar. 5, 2026).

finds Respondents' position unpersuasive and instead concludes that the exhaustion of Petitioner's remedies is futile.[7]

### B.    Section 1226(a) Applies to Petitioner's Detention.

Petitioner argues that 8 U.S.C. § 1225(b)(2) does not apply to him because he "previously entered the country and [was] residing in the United States prior to being apprehended and placed in removal proceedings by Respondents." (Doc. 1, at 20). According to Petitioner, his continued detention under § 1225(b)(2) is unlawful and he is entitled to a bond hearing under § 1226(a). (*Id.*)

Respondents contend that because Petitioner did not enter the country lawfully and has not departed, he is still considered an "applicant for admission" who is "seeking admission" and therefore he is properly detained under § 1225(b)(2). (Doc. 8, at 16, 25). According to Respondents, "an applicant for admission must necessarily be deemed to be 'seeking admission.'" (*Id.* at 25).

Notably, five Judges in this District have recently determined that § 1226(a) applies to habeas petitioners similarly situated to Petitioner. *See, e.g., Gonzalez Cortes v. Holt*, No. CIV-25-1176-SLP, 2026 WL 147435, at *7 (W.D. Okla. Jan. 20, 2026); *Ramirez Rojas v. Noem*, No. CIV-25-1236-HE, 2026 WL 94641, at *1 (W.D. Okla. Jan. 13, 2026); *Morocho v. Kelly*, No. CIV-25-1247-R, 2026 WL 36452, at *3 (W.D. Okla. Jan. 6, 2026);

---

[7] Because the undersigned determines exhaustion is futile, the undersigned need not determine whether "prudential factors weigh in favor of not requiring exhaustion in this case." *Castro v. Noem*, No. 1:25-cv-1129-KWR-LF, 2026 WL 280470, at *3 n.1 (D.N.M. Feb. 3, 2026) (citing *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992), *abrogated by statute as recognized in Garrett v. Hawk*, 127 F.3d 1263, 1265 (10th Cir. 1997).

*Colin v. Holt*, CIV-25-1189-D, 2025 WL 3645176, at *5 (W.D. Okla. Dec. 16, 2025);

*Urbina Garcia v. Holt*, No. CIV-25-1225-J, 2025 WL 3516071, at *4 (W.D. Okla. Dec. 8,

2025). Two Judges in the District have determined that § 1225(b)(2)(A) applies. *See*

*Gutierrez Sosa v. Holt*, No. CIV-25-1257-PRW, 2026 WL 36344, at *3 (W.D. Okla. Jan.

6, 2026); *Alvarado Montoya v. Holt*, No. CIV-25-1231-JD, 2025 WL 3733302, at *12

(W.D. Okla. Dec. 26, 2025).

As set forth below, the undersigned has analyzed the statutory text of § 1225 and §

1226, the legislative history, and the BIA's application of the statutes for the past three

decades, as well as numerous recent cases from both within and outside this District. The

undersigned agrees with the majority of Judges in this District, and indeed the majority of

judges to consider this exact issue, to conclude that Petitioner falls within the confines of

§ 1226(a), and not § 1225(b)(2)(A). Accordingly, the undersigned recommends that the

Court conclude Petitioner is entitled to a bond hearing under § 1226(a).

### 1. Statutory Interpretation of § 1225(b)(2)(A) and § 1226(a)

At issue is whether "an applicant for admission" who is "seeking admission"

includes an alien like Petitioner who was living in the United States when detained. 8

U.S.C. § 1225(a)(l). When interpreting a statute, the "inquiry begins with the statutory

text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*,

541 U.S. 176, 183 (2004). "If the statutory language is plain, [the Court] must enforce it

according to its terms." *King v. Burwell*, 576 U.S. 473, 486 (2015). "But oftentimes the

meaning—or ambiguity—of certain words or phrases may only become evident when

placed in context." *Id.* (citation modified). "So when deciding whether the language is

plain, the Court must read the words in their context and with a view to their place in the overall statutory scheme." *Id.* (citation modified).  *See United States v. Bishop*, 412 U.S. 346, 356 (1973) ("[C]ontext is important in the quest for [a] word's meaning."); *United States v. Ceballos-Martinez*, 387 F.3d 1140, 1144 (10th Cir. 2004) (noting that statutory interpretation "requires [courts] to interpret Congress's choice of words in the context that it chose to use them").  Further, "it is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citation modified).  When considering the INA's overall context, the undersigned concludes the statute limits the scope of the terms "applicant for admission" and "seeking admission" in § 1225(b)(2)(A).

As relevant here, § 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."  8 U.S.C. § 1225(b)(2)(A).  Chief Judge DeGuisti recently held "that § 1225(b)(2)(A) unambiguously requires that an 'applicant for admission' also be 'seeking admission' for the section to control," and "noncitizens 'seeking admission' are those who have not effected an entry into the United States." *Colin*, 2025 WL 3645176, at *4 (citation modified).  Judge Russell similarly ruled that § 1225(b)(2)(A) "only applies when a noncitizen 'applicant for admission' is actively 'seeking admission' into the United States." *Valdez v. Holt*, No. CIV-25-1250-R, 2025 WL 3709021, at *3 (W.D. Okla. Dec. 22, 2025); *see also Morocho*, 2026 WL 36452, at *3

10

(same); *Escarcega v. Olson*, No. CIV-25-1129-J, 2025 WL 3243438, at *2 (W.D. Okla. Nov. 20, 2025) (same).  Numerous Judges in this District further ruled that if all "applicants for admission" are also "seeking admission," then § 1225(b)(2)(A)'s inclusion of the phrase "seeking admission" would be redundant and superfluous.  *Gonzalez Cortes*, 2026 WL 147435, at *3; *Morocho*, 2026 WL 36452, at *2; *Valdez*, 2025 WL 3709021, at *3; *Colin*, 2025 WL 3645176, at *4.  "Courts should avoid statutory interpretations that make any part of the statute superfluous."  *Colin*, 2025 WL 3645176, at *4 (citation modified); *see also Gonzalez Cortes*, 2026 WL 147435, at *3 (same).

The undersigned similarly reads the term "seeking admission" to narrow the category of "applicants for admission" subject to mandatory detention.  "'Seeking' means 'asking for' or 'trying to acquire or gain.'   Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/seeking."  *Lepe v. Andrews*, No. 25-CV-01163, 2025 WL 2716910, at *5 (E.D. Cal. Sep. 23, 2025).  "The plain meaning of the phrase 'seeking admission' requires that the applicant must be presently and actively seeking lawful entry into the United States.  The use of the present participle in § 1225(b)(2)(A) implies action—something that is currently occurring, and in this instance, would most logically occur at the border upon inspection."  *Caballero v. Baltazar*, No. 25-CV-03120, 2025 WL 2977650, at *6 (D. Colo. Oct. 22, 2025) (citation modified); *accord Colin*, 2025 WL 3645176, at *4-5.  Thus, mandatory detention under § 1225(b)(2)(A) applies to arriving aliens actively seeking admission at or near the border or port of entry.

Giving effect to each clause and word of a statute includes an analysis of the statute's title.  "A title is especially valuable where it reinforces what the text's nouns and

verbs independently suggest." *Dubin v. United States*, 599 U.S. 110, 121 (2023) (citation modified). Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing." (emphasis added). Use of the term "arriving" further indicates the section governs entrance of aliens to the United States at ports of entry. Indeed, § 1225 is located between two other sections dealing with arrivals of aliens: § 1224 is titled "Designation of ports of entry for aliens arriving by aircraft," and § 1225a is titled "Preinspection at foreign airports."

The undersigned's reading is bolstered by the fact that § 1225 establishes an inspection scheme for when to let aliens into the country. The subheading for § 1225(b)(2) reads "Inspection of Other Aliens," reinforcing the idea that it applies to those coming in, not already present. Section 1225(d) is labeled "Authority Relating to Inspections" and outlines the various powers of immigration officers to search and detain vessels and "arriving aliens. Further, § 1225(a)(2) and § 1225(a)(3) address "stowaways" and "crewmen," terms that likewise suggest arrival at a border or port of entry.

Finally, § 1225's place in the overall statutory scheme supports the undersigned's reading. *See King*, 576 U.S. at 486 (holding that courts are meant to "construe statutes, not isolated provisions") (citation modified). That Congress separated removal of "arriving aliens" from its more general section for "Apprehension and detention of aliens" in § 1226 implies that Congress enacted § 1225 for a specific, limited purpose. This interpretation is also consistent with the Supreme Court's guidance in *Jennings* that § 1225(b)(1) and (b)(2) "authorizes the Government to detain certain aliens seeking admission into the country" and § 1226(a) and (c) "authorizes the Government to detain certain aliens already in the

country pending the outcome of removal proceedings." 583 U.S. at 289.  That delineation by Congress aligns with the Supreme Court's recognition that "the distinction between an alien who has effected entry into the United States and one who has never entered runs throughout immigration law." *Zadvydas*, 533 U.S. at 693 (citation modified).

After considering the text and statutory framework, the undersigned concludes that an alien like Petitioner is not an "applicant for admission" who is "seeking admission" under § 1225(b)(2)(A).  He has resided in the United States for years and was not arrested when attempting to cross the border or enter the country.  "As § 1225(b)(2)(A) applies only to those noncitizens who are actively 'seeking admission' to the United States, it cannot, according to its ordinary meaning, apply to [the petitioner], because he has already been residing in the United States for several years."  *Colin*, 2025 WL 3645176, at *5 (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 489 (S.D.N.Y. 2025)).

### 2.    Legislative History and Recent Amendment of § 1226

The legislative history and recent amendment of § 1226 also lead to the conclusion that it applies to aliens who previously entered without inspection and were residing in the United States when apprehended.

First, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which contains the current statutory scheme, "did not serve as a complete replacement of the pre-IIRIRA immigration scheme. As noted by the House of Representatives' Report relating to the changes, '[§ 1226(a)] restates the current provisions in section 242(a)(1) regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States.'  H.R. Rep. No. 104-469,

at 229." *Gonzalez Cortes*, 2026 WL 147435, at \*6; *see also Urbina Garcia*, 2025 WL 3516071, at \*4 (noting "when Congress enacted the IIRIRA, it did not fully disrupt the old system, including the system of detention and release on bond") (citation modified).  In fact, after passage of the IIRIRA, the Department of Justice issued implementing regulations and explained that "despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (citation modified).

Further, Congress' recent amendment to § 1226 conflicts with Respondents' interpretation of § 1225(b)(2)(A).  Last year, Congress amended § 1226 via the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).  The Laken Riley Act added § 1226(c)(1)(E), which mandates detention for aliens who

- are inadmissible under § 1182(a)(6)(A) (noncitizens present in the United States without being admitted or paroled, like Petitioner), § 1182(a)(6)(C) (misrepresentation), or § 1182(a)(7) (lacking valid documentation) **and**

- have been arrested for, charged with, or convicted of certain crimes.

8 U.S.C. § 1226(c)(1)(E)(i)-(ii) (emphasis added).

Considering that § 1182(a)(6)(A)(i) specifically refers to "alien[s] present in the United States without being admitted or paroled," and § 1226(c)(1)(E) requires detention without bond of these individuals if they have <u>also</u> committed a felony, the new statutory

14

exception would be superfluous if § 1225(b)(2) already authorized their mandatory detention. That is, because an "alien present in the United States" without admittance would be unlikely to prove that they are "clearly and beyond a doubt entitled to be admitted," ICE would never need to rely on § 1226(c)(1)(E) to detain them. *See Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013) ("The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.") (citation modified). District courts have noted that adoption of Respondents' interpretation "would largely nullify a statute Congress enacted this very year and must be rejected." *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sep. 9, 2025) (quoting *Gomes v. Hyde*, No. 25-cv-11571, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025) (citation modified)); *see also Alejandro v. Olson*, No. 1:25-cv-02027-JPH-MKK, 2025 WL 2896348, at *8 (S.D. Ind. Oct. 11, 2025) ("Under Respondents' expansive interpretation of § 1225, the amendment would have no purpose. Section 1225(b)(2) would already provide for mandatory detention of every unadmitted alien, regardless of whether the alien falls within one of the new classes of non-bondable aliens established by the Laken Riley Act."); *Gonzalez Cortes*, 2026 WL 147435, at *6 (finding that "the enactment of the Laken Riley Act lends further support for the application of § 1226 in these circumstances").

Accordingly, the legislative history and recent amendment of § 1226 support the undersigned's recommendation that § 1226(a) applies to aliens like Petitioner.

### 3.    The BIA's Current and Historical Interpretations of § 1225(b)(2)(A) and § 1226(a)

On September 5, 2025, the BIA ruled that an immigration judge lacks authority to consider a bond request for any person who is present in the United States without admission because such a person is an applicant for admission who is seeking admission and subject to mandatory detention under § 1225(b)(2)(A). *Hurtado*, 29 I. & N. Dec. at 220, 229. The BIA in *Hurtado* concluded that § 1225(b)(2)(A) covers inadmissible aliens who lived unlawfully in the United States for longer than two years without apprehension.[8] *Id*. at 229.

The undersigned reaches a different conclusion from the BIA's statutory analysis in *Hurtado*. Notably, this Court is not bound by the BIA's interpretation of § 1225(b)(2)(A). *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024) ("Courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous.") (citation modified). *Hurtado* reflects a sharp pivot from longstanding immigration practice and policies. For almost three decades, most aliens who entered without inspection and were later apprehended while living in the United States were placed in standard removal proceedings and received bond hearings, unless subject to an exception. *See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Aliens who are present without having been admitted or paroled (formerly

---

[8] As stated *supra* Section V.A, The United States District Court for the Central District of California vacated *Hurtado* nine days after Petitioner filed the instant Petition.

referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination.") (citation modified). "[T]he longstanding practice of the government — like any other interpretive aid — can inform a court's determination of what the law is." *Loper Bright Enters.*, 603 U.S. at 386 (citation modified).  Respect for Executive Branch interpretations of statutes may be "especially warranted" when the interpretation "was issued roughly contemporaneously with enactment of the statute and remained consistent over time." *Id.*

Accordingly, decades of consistent practice by ICE support the undersigned's conclusion that § 1226(a) applies to Petitioner.  Again, this analysis aligns with courts that have recently addressed this issue.  *See Gonzalez Cortes*, 2026 WL 147435, at *7 (finding that "while Respondents claim that their decision to use § 1225(b)(2) is discretionary," "Respondents ignore that such a decision conflicts with nearly thirty years of past practices"); *see also, e.g., Jiménez García v. Raybon*, No. 25-cv-13086, 2025 WL 2976950, at *4 (E.D. Mich. Oct. 21, 2025) (finding that "ICE's decision to upend 30 years of reasoned statutory interpretation is not persuasive").

### 4.     The Undersigned Agrees With the Majority of this District Court and District Courts Nationwide that the Detention of Aliens Like Petitioner is Governed by § 1226(a).

In the Western District of Oklahoma, Chief Judge DeGiusti, Judge Palk, Judge Jones, Judge Russell, and Judge Heaton have recently ruled in a growing number of habeas challenges that § 1226(a) governs the detention of petitioners who were apprehended and placed in removal proceedings when they had already been residing in the country.  These rulings are in accord with a myriad of district courts nationwide.  The undersigned agrees

17

with the analysis and conclusions of these courts.  Respondents' arguments and the BIA's decision to pivot from decades of consistent application are unpersuasive when compared to the principles of statutory interpretation.

Notably, several Judges in this District have found that because § 1225(b)(2)(A) was "unambiguous" in support of the petitioner's interpretation, the Judges did not need to address the statute's title, legislative purpose, historical interpretation, or the Laken Riley Act.  *Morocho*, 2026 WL 36452, at *3 n.1; *Valdez*, 2025 WL 3709021, at *3 n.1; *Escarcega*, 2025 WL 3243438, at *3.  Judge Jones noted that "even if the Court did find § 1225(b)(2)(A) ambiguous, the section's legislative purpose and historical interpretations do not support Respondents' position."  *Escarcega*, 2025 WL 3243438, at *3 n.5 (citation modified).  Judge Palk found the plain language, legislative history, and past practices all support a finding that "Petitioner's detention is not governed by §1225(b)(2)."  *Gonzalez Cortes*, 2026 WL 147435, at *7.

Other district courts in the Tenth Circuit have routinely applied § 1226(a) in recent habeas challenges akin to Petitioner's.  *See, e.g.*, *Aguilar Tanchez v. Noem*, No. 25-CV-1150, 2026 WL 125184, at *10 (D. Utah Jan. 16, 2026) (holding petitioner's detention is governed by § 1226(a) and not § 1225(b)(2)); *Leonardo G.Z. v. Noem*, No. 25-CV-0600, 2025 WL 3755590, at *10 (N.D. Okla. Dec. 29, 2025) (applying § 1226(a) after "having independently considered the plain language of § 1225(b)(2)(A) in the context of § 1225's overall structure and the broader statutory framework governing pre-removal detention of noncitizens"); *Cruz Valera v. Baltazar*, No. 25-CV-03744, 2025 WL 3496174, at *3 (D. Colo. Dec. 5, 2025); *Pu Sacvin v. De Anda-Ybarra*, No. 25-cv-1031, 2025 WL 3187432,

18

at *3 (D.N.M. Nov. 14, 2025). More generally, an "overwhelming, lopsided majority" of district courts around the country have applied § 1226(a) to govern detention for aliens like Petitioner. *Mercado v. Francis*, --- F. Supp. 3d ---, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (noting the contrary interpretation of § 1225 and § 1226 "has been challenged in at least 362 cases in federal district court" and "challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States").

The Seventh Circuit Court of Appeals has weighed in on this issue. The court ruled on a motion to stay pending appeal that based on a "preliminary record" the respondents "are not likely to succeed on the merits of their argument that those individuals, whom ICE arrested in Chicago without a warrant, are subject to mandatory detention under § 1225(b)(2)(A)." *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061-62 (7th Cir. 2025). The Seventh Circuit reasoned that

> § 1225(a)(1) defines an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). And while a noncitizen arrested in the Midwest might qualify as "an alien present in the United States who had not been admitted," § 1225(a)(1), the mandatory detention provision upon which Defendants rely, limits its scope to an "applicant for admission" who is "seeking admission," § 1225(b)(2)(A).

*Id*. at 1061. Judges in this District have found the Seventh Circuit's analysis to be persuasive. *Maldonado v. Noem*, No. CIV-25-1379-J, 2026 WL 160950, at *1 (W.D. Okla. Jan. 21, 2026); *Valdez*, 2025 WL 3709021, at *2; *Toledo Santos v. Grant*, No. CIV-25-1433-SLP, 2026 WL 184287, at *2 (W.D. Okla. Jan. 23, 2026) (noting this Court's decision to apply § 1226 to a similarly situated petitioner "is in accord" with the Seventh Circuit).

19

In contrast, Judge Dishman and Judge Wyrick in this District have adopted Respondents' position that aliens like Petitioner fall under § 1225(b)(2)(A) despite residing in the United States at the time of their apprehension by ICE. *See Gutierrez Sosa*, 2026 WL 36344, at \*3; *Alvarado Montoya*, 2025 WL 3733302, at \*6-12. Respondents further cite cases from across the country in which district judges have done the same. (*See* Doc. 8 *passim*). Additionally, the Fifth Circuit Court of Appeals recently applied § 1225 to a similar habeas challenge, agreeing with Respondents' position based on "the relevant provisions and structure of the [INA], the statutory history, and Congressional intent." *Buenrostro-Mendez v. Bondi*, No. 25-20496, --- F.4th ---, 2026 WL 323330, at \*1, \*4-9 (5th Cir. Feb. 6, 2026). For the reasons previously discussed, the undersigned respectfully disagrees with the textual analysis and statutory interpretations by these courts. Notably, several Judges in this District have since expressly acknowledged the Fifth Circuit ruling but have not altered their analysis. *See Campa v. Johnson*, No. CIV-26-1-HE, 2026 WL 446978, at \*1 (W.D. Okla. Feb. 17, 2026) ("The 2-1 decision in *Buenrostro-Mendez* makes clear that strong arguments support both statutory readings of the parties. The court, however, remains persuaded that § 1226(a) governs and continues to follow similar rulings by the judges in this district and the Seventh Circuit Court of Appeals in *Castanon-Nava*."); *Jose-de-Jose v. Noem*, No. 25-1454-SLP, at 4 (W.D. Okla. Feb. 9, 2026) (granting habeas relief despite contrary authority in Western District of Oklahoma and Fifth Circuit); *Leal Damian* v. Jones, No. 25-1561-J, at 4 (same).

In conclusion, the undersigned recommends that the Court apply § 1226(a) to govern Petitioner's current detention and thus grant the Petition in part and order

20

Respondents to provide Petitioner with a prompt individualized bond hearing before a neutral immigration judge.

### C.      The Court Should Decline to Address Petitioner's Remaining Claim.

Petitioner also argues that his detention without a bond hearing violates the Fifth Amendment's Due Process Clause.  (Doc. 1, at 20-21).  If the Court grants Petitioner's requested relief for a bond re-determination hearing under § 1226(a), the undersigned recommends that the Court follow an approach of other district courts and decline to decide the merits of the remaining claims, and allow Petitioner to renew them if Respondents do not provide him with a bond hearing or release him within the ordered time.  *See Pizarro Reyes*, 2025 WL 2609425, at *8 ("The Court will decline to decide the merits of [petitioner's] due process claim given that the Court will grant the relief he seeks based on its interpretation of the applicability of § 1226(a)."); *see also Jimenez Garcia*, 2025 WL 2976950, at *4 (declining to analyze remaining claims); *Alvarez Puga*, 2025 WL 2938369, at *6 (citing *Pizarro Reyes* and declining to decide the merits of petitioner's due process claim).

### VI.    Recommendation and Notice of Right to Object

For the reasons discussed above, the undersigned recommends that the Petition (Doc. 1) be **GRANTED in part.**  The undersigned recommends that the Court order Respondents to provide Petitioner with an individualized bond hearing under 8 U.S.C. § 1226(a) within seven days or otherwise release Petitioner if he has not received a lawful bond hearing within that period.  The undersigned further recommends that the Court order

Respondents to certify compliance by filing a status report within ten days of the Court's order.

**The Court advises the parties of their right to object to this Report and Recommendation by March 13, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).[9]  The Court further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge and terminates the referral unless and until the matter is re-referred.

**ENTERED** this March 6, 2026.

*Amanda L. Maxfield*
AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE

---

[9] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to Report and Recommendations.  *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").